The next case for argument this morning is 17-1946, District of North Dakota, Landon Michael v. Joshua Trevena et al. This case is 17-1946, District of North Dakota, Landon Michael v. Joshua Trevena et al. Mr. Storms? Good morning, Your Honors. I am counsel for Appellant Landon Michael, and we are appealing from the District Court's grant of summary judgment and its denial of our motion for reconsideration. Today, I'd like to focus on the use of force primarily, specifically as it related to the baton usage by Officer Chavey. And as time allows, I'll try to address the other issues to the extent the Court is interested. Your Honors, it's clearly established in this circuit, and was at all times material hereto, that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose no danger to the officers or others. Similarly, no reasonable officer would use more than minimal force on a nonviolent misdemeanant who does not flee or does not actively resist arrest or pose a danger to the officer or others. Now here, the trial court made several rulings that I believe were correct with respect to the record. He found, the District Court judge found, that at most, Mr. Michael was a nonviolent misdemeanant. I believe what the record really shows is similar to what's cited in footnote three of Your Honor Grunder's opinion in the Shannon v. Koehler case, which is, I believe the record shows objectively that Mr. Michael committed no crime. But again, at most, a nonviolent misdemeanant. If we talk about danger, the District Court correctly found that Mr. Michael was not posing a danger to anyone on the scene. Another gram factor that, again, weighs in appellant's favor. He wasn't fleeing. Mr. Michael did not attempt to flee. At one point, he attempted to leave the scene, which I believe he was lawfully entitled to do because he was suspected of committing no crime. But he stayed upon the officer's instruction and detention of him there. The only gram factor that the court found weighed in favor of the defendants in this case was the issue of resistance. And I've heard District Court Judge Schultz characterize it as such. In this case, it strikes me as such, where you have effectively a court using a claim of resistance as a talisman for all subsequent force. And I believe that's what we see here because the force was not properly weighed. And part of that is a summary judgment problem, I believe, on the Rule 56 standard. We have sort of a Tolan v. Cotton issue in this case in a couple different ways. One, it's clear the District Court just did not like Mr. Michael and made character judgments about Mr. Michael's behavior, routinely calling him childish throughout the opinion. So are you saying then that's some kind of a credibility determination at the summary judgment? Is that what you're meaning by those characterizations? Absolutely, Your Honor, because a reasonable jury could look at these facts and conclude that Mr. Michael was rightfully upset about being unlawfully detained and arrested. Was his behavior remarkable? No, but this court has recognized that our citizens don't have to be perfect in order to avoid using force on them. You can be stubborn and irritating and law-abiding all at the same time. But the District Court, I believe, attacked Mr. Michael in a way that entered into the purview of the jury in that regard. Also, one of the more problematic statements made by the District Court was, it's noted on addendum page 16, where the court wrote, as evidenced by the dash cam videos, Michael resisted arrest by telling the officers he was not under arrest, by not complying with the command to stand up, and by tensing up and firmly gripping the arms of the lawn chair. The idea that the video showed that Michael was somehow firmly gripping the arms of the lawn chair is just not credible, because the video is taken from some distance away, and the lawn chair is seated immediately behind a tree. No one can see on the video what's happening behind that tree. And while the officers may testify that Mr. Michael behaved in a certain way, the thrust of Mr. Michael's testimony about what was going on behind that tree is that he was sitting in a manner akin to peaceful protest. He did not have his arms wrapped around the tree. So to say that the video somehow— It was clear that he wasn't going to comply with the arrest order, right? Yes, Your Honor. And Graham says, you know, sometimes you have to use force to effect—you can use force to effect an arrest, right? That's correct, Your Honor. And then the question becomes, what's reasonable in light of the type of resistance that's faced? And, you know, I thought that Your Honor's dissent in Blazek was very instructive, and particularly because it did weigh on a number of binding precedents that still are good law here, which include Copeland and which include Cookla, and we look at the type of resistance. And at most, sitting in a lawn chair is passive resistance, or you can characterize it under rural terms as inconsequential or de minimis. Can we divide the two—I think we're required to look at the actions of both officers, right? Yes, Your Honor. I think I understand your argument with respect to Travera using the baton, and that's where the injury actually occurs, is on that arm, correct? At Chaffee, on the left arm, Your Honor. At Chaffee? Yes. Yeah, all right. So what about Travera? He was on the other side, and there was really no injury there. So what's the argument with respect to Travera? Well, Your Honor, I think we go back to the Chambers case, which tells us it's not the injury that matters. It's not dispositive. I believe that Travena— I won't argue with that, but I watched the video, and I didn't see any particularly aggressive moves by Travera on the other side. And I will concede, Your Honor, Travena's use of force was more reasonable than Chaffee's. So do you concede he's entitled to qualified immunity? I do not concede he's entitled to qualified immunity. I believe that he never had reason—the whole reason that Mr. Michael was— With respect to the excessive force claim. With respect to the excessive force claim. I believe by—I think you could look at cases similar to be it Cook or Copeland and say just the act of engaging in a takedown and participating in this takedown on a nonviolent misdemeanant is unreasonable under those circumstances. But I do concede that his use of force was far more reasonable than Mr. Chaffee's was under the circumstances, but still unreasonable. Mr. Storms, let's assume that the facts show that there was no violation of law here. The test, as I understand it, is was the police officer plainly incompetent in believing it was before acting as he did? And where are you on that? And I believe he was, Your Honor. I think—and that goes very much so to the unlawful arrest portion, in that I don't believe this was an objectively reasonable mistake that would qualify him for qualified immunity under the arguable probable cause standard. I believe he was plainly incompetent. And we're talking about Officer Trevina as well, not Chaffee. Well, the officers appear to me to have jumped in on the side of the ladies that wanted the keys back, and perhaps worked in their behalf wrongly, but then your client didn't act very sensibly either. And so we have a close call here, in my mind, as to whether the officers were right to think that they had reason to do what they did. In my mind, Your Honor, they did not have an arguable probable cause for arrest because the officers on the scene, they showed up and declared it's a civil issue. Now, we always stay away from subjective intents typically, but if you look at the Peterson v. Plymouth case, if an officer knows and the objective facts show that the officer is in possession of knowledge that it's a civil dispute, at that point in time, it's a question for the jury. In Peterson, it was an arguable probable cause, but it would also go to arguable reasonable suspicion. But these are officers who knew they were there for a civil issue, Your Honor. But it did shift, right? I mean, that's the idea of the officers as well. It started out civil. The guy lies to me about something that could otherwise have been maybe a criminal act on the part of one of the participants. And only after he was really detained and subjected to harassing, coercive questioning for a period of time, Your Honor, he should have been allowed to leave the scene, and he wasn't. But at that point in time, when he makes that false statement, no reasonable officer in the United States could believe that they could arrest somebody just for making any false statement. Those statutes and similar statutes. But generally, making a false report to a police officer is a crime, right? Well, if one's making a false report, it's not just the act of making a false report. It's also doing it in a way to invoke an investigation and materially mislead. There's usually an additional element. I agree. You've got some good arguments if you dig into the elements of this particular statute. But as a general proposition, making a false report to the police is usually a crime, right? So why is it so unreasonable for them to have reached the conclusion that there was at least arguable probable cause? Well, we don't have an individual making a report to the officers, Your Honor. We have an individual who's going back to sit in the chair and just wants to be let alone, and he's being questioned and harassed by the officer. And at that point in time, he gives in to this coercive questioning and says, fine, you're right, I'm saying that. And then he says, you can be a witness against me, because he knows that he doesn't believe him. So at that point in time, we have officers. And it really goes back to the very beginning of this to get the tenor. And again, subjective intent can be viewed when we're talking about some of these civil matters slightly. But when Officer Trevino shows up on the scene, he says, this is ridiculous, this is a civil matter. And Michael, who knows the Constitution better than the officer does, says, you're right, why are you bothering me? And at that point in time, he says to Officer Trevino, I think I'd like to press charges for harassment. And then at that point in time, Trevino says, I'm going to place you under arrest if you don't give me the keys. And there's no reason to place Michael under arrest. He knows he's there for a civil incident. But he's so frustrated by Michael, who is stubborn and won't bend to his will. So this was a situation where from the very outset, Officer Trevino was trying to fabricate a reason to arrest Mr. Michael. Does that, though, does that lead up affect the analysis of whether that statement was false for purposes of qualified immunity, arguable, probable cause for arrest? Oh, I think it does, because I think it helps inform us that no reasonable officer would have assumed that this clearly ridiculous statement under these circumstances arising from an event that at best involved in conciliation court was actually a crime. This is a man who threatened, this officer threatened to arrest Michael for like four different things, right? Deprivation of services. And then it's going to be theft. And now it's a false statement. Like, voila. So, yeah, I think it tells us that this is preposterous, Your Honors. I am out of time, and I'll reserve my final bit for rebuttal. Thank you. Good morning, Mr. Schmidt. Good morning. May it please the Court, Counsel. The majority of the questions that were posed to Mr. Storms kind of flowed from how did Officer Truvina ever get to the scene in the first place? Well, let's go back to the previous day. This is all information the officers had. They were called by Michael's mother's, I guess, daughter, which would be Steph Stasek, saying the rental vehicle is in my mother's name. I understand that. Yes. And they called the police and reported the stolen vehicle. Isn't that right? That's correct. And they came, and you looked over the contract, and you discovered that the defendant here was a designated driver on it, and she wasn't, and so forth. So I'm not sure I'm following your recitation of the facts. The point I'm getting at is this wasn't the first time that Officer Truvina had an interaction with Mr. Michael. The previous day, he witnessed Mr. Michael act rather radically. Ultimately, he did end up giving up one set of keys. Mr. Truvina thought, that's all that we're dealing with here. The issue's done. I can go home. I shouldn't have to see these people again. Four or five times over the next 24 hours, the phone rings at the Watford City Police Department with reports relating to Mr. Michael's possession of the keys. Officer Truvina comes back the following day on a report from Ms. Stashik again saying, I need a cop here because I don't know what Mr. Michael's going to do. What business is it of the officers that he had two sets of keys and wouldn't give them up? What's the crime? Well, I think that a reasonable argument could be made that if the mother's the one who's financially responsible for the rental vehicle Well, that's not much of his business, is it, as a police officer? Is he a protector of mothers and their finances with their children? And there may be something to that, but we also have multiple situations where officers show up to perform civil standbys to prevent potential domestic disputes from arising. Is it a crime for an individual to stick their foot purposely under a wheel and let the wheel roll over it and then start, I guess, howling and whatever when he knew the presence of the police officers and could see him? Is that a crime? I guess I'd respond to your question by saying it's not a crime to stick your foot under someone's vehicle. It is arguably a crime to turn around and report to a police officer that they intentionally ran over your foot when it's clear from the videotape that you intentionally stuck your foot under that vehicle. The crime is reporting that somebody intentionally ran over somebody's foot? A false report to a police officer. And intentionally saying they did that? Is that a crime? Is that a high misdemeanor? Is that your argument? It's a low misdemeanor. I believe it's a Class A misdemeanor in the state of North Dakota to make a false report to a police officer, which is the crime for which he was arrested. You have to make a false report concerning a crime, don't you, to make a false report? Any kind of a false report? I don't follow that argument. The crime in this particular situation was that Ms. Staszik intentionally ran over his foot with her automobile. That was the crime that Mr. Trevina believed that was being reported to him. I think the evidence on that is pretty clear. That's what the district court found as well. She committed the crime and he was falsely reporting it. Is that your position? Yes, Your Honor. That is my position. Does it matter whether we characterize what he said as an opinion or a fact? I mean, it sounds like they both agree. It's kind of unclear from the video, but it sounds like both Mr. Michael and the officer agree that the foot was run over. At least there's no dispute on that. Is the fact that he's saying it was intentional and the officer saying it wasn't, does it matter? That that's just a matter of perception? I believe that an argument could be made that it's a matter of perception. But one thing I would like to point the court to, and this is listed on page 24 of our brief, is the affidavit of probable cause that Officer Trevina filled out. He indicated that Michael gave him several false statements during their encounter with respect to the possession of the keys, that Michael intentionally stuck his foot under the van, and Michael alleged his sister ran over his foot and stated he did not intentionally extend his foot. That was on the affidavit of probable cause that was filled out by Officer Trevina. All of the information that Officer Trevina filled out in his affidavit of probable cause is supported by the record in this case. So the standard we're looking at, as Justice Beam pointed out, is clear incompetence. Is someone clearly incompetent? I believe the words in Small v. McChrystal, which is one of our cases, is plainly incompetent. So you're arguing that it wasn't plainly incompetent for the police officer to find this a crime, and the case depends upon that. I am arguing that he was not plainly incompetent by believing that a crime had occurred at that particular time. Yes, that is what I'm arguing. How about on the excessive force, to change the subject a little bit, what supports the district court's conclusion that Mr. Michael was gripping the chair? Primarily the testimony of Officer Chafee. I would argue that it doesn't matter whether he was gripping the chair or not. He was refusing to get up from a seated position after he was being told, you're under arrest. He specifically stated, no, I'm not, and remained seated in his chair. Let's put it in context. I mean, you'll agree that almost all the Graham factors go against you, except arguably for the resistance. I would agree with that. So isn't the level of resistance key here? I would argue that the level of resistance matters, but the Graham factors only determine whether the force was reasonable. For qualified immunity, we have to look at Saussure v. Katz, and that acknowledges that the Graham factors may play a factor, but the Graham factors aren't as positive of whether qualified immunity should be entitled to the officers at the time. Now, we have to look at, were the officers on clear notice that what they were doing violated a constitutional right? Well, we have the Werdish case. In Werdish, there was an erratic driver, pulled over, non-responsive to the officer's commands, wouldn't get out of the vehicle. Officers removed him from a seated position to the ground and effectuated the arrest. And we also had the Foster v. Metropolitan Airports Commission case, which was granted a 1990 case, but it involved an individual who was parked outside of the Minneapolis airport, was approached by the officer, told him to move his car. He said, no, I'm not moving my car. The officer wrote him a ticket. The Foster ripped up the ticket, refused to get out of the car. Two other officers came over, pulled Foster out of the car, and they arrested him. And this court said that the officer's use of force in pulling Foster from the car and handcuffing him was reasonable under the circumstances and no reasonable juror could find otherwise. We have case law in this circuit that says if you're going to sit down and refuse to comply with commands that you're under arrest and allow yourself to be arrested, it is reasonable to remove someone from a seated position. There's no basis for an arrest? No facts that support an arrest? Your Honor, I think if there were no facts that supported the arrest, the analysis may change. I would not concede that there were no facts that supported an arrest in this particular situation, however. But you'll concede that the level of force matters. I mean, the person sitting in the car, the officer says, get out. He says no, doesn't do anything else, and the officer shoots him. There's a problem, right? Absolutely, I would concede that. So again, back to the facts here. You said that one of the officers testified that he was gripping the chair. Didn't the plaintiff testify to the contrary, and don't we have a fact question? Because you certainly can't see it in the video. It's blocked by the tree. I would agree that the particular issue as to whether he was gripping the chair would be a fact issue, but it's not a material fact. So the district court was wrong on that, right? I don't think the district court was wrong. They didn't assume the facts in the light most favorable to the plaintiff then. With respect to that one particular immaterial fact, I think it's debatable. But I would state that that particular fact is not material as to whether qualified immunity applies to this case. Michael resisted arrest, whether he was sitting. If he's sitting in the chair and he says, you're not going to arrest me, doesn't do anything else, he's a misdemeanant, hasn't fled, all the other factors, they can then use the baton and put him in an arm bar. And break his arm. Yes. The broken arm was, in this particular situation, Officer Chaffee even admitted the procedure he used, he'd never heard of breaking an arm before. He was trained in this particular procedure. It's used to gain control of an individual. Now, the amount of damage to the, I guess the amount of injury to the individual is a factor, but it's not dispositive. That's what Chambers told us. Correct me if I'm wrong here, but I thought that the police officer who had almost all of the interchange with the person that was injured was not the one who threw him to the ground and broke his arm. Is that right? That is correct. And then later said to him or somebody, well, this was a big mistake or something like that? I don't believe he ever said this was a big mistake. He asked Officer Trevino why he arrested him, and then he engaged in a conversation with Ms. Stashik, and I think it's very reasonable to interpret the conversation he had with Ms. Stashik off camera as him trying to temper some or trying to get her to calm down, ease her temper a little bit after what just happened. So as to the person who is being sued here for damages, much of the give and take with this party didn't involve him at all, right? Both officers are being sued in their individual capacities for damages in this particular case, but I will agree that the majority of the interaction with Mr. Michael, at least on July 6th, occurred with Mr. Trevino. Mr. Chaffee did have interaction with Mr. Michael the previous day when he told him you need to settle down, and then he dropped the keys in the street, and that was essentially the end of that particular interaction. There is one other issue that I would like to touch on as it was raised on appeal, and it deals with Mr. Michael's request for reconsideration with respect to the Terry stop. This case was never about a Terry stop. It was never pled. It was never argued. It was until they brought it up in response to our motion for summary judgment. The standard of review for the Rule 59E is different than qualified immunity. Obviously, the qualified immunity, we're looking at that as a summary judgment decision. It's de novo. 59E is a clear abuse of discretion. You'll look through the complaint, which I'm sure you all have or will shortly, and you'll notice that there's only two causes of action alleged, one for excessive force and one for false arrest. The words reasonable suspicion are never stated in the complaint. All that's stated is probable cause. That's why we made a motion for summary judgment on the false arrest and the excessive force claims. The district court was correct in not considering the Terry stop claim, and went on to further say that even if I had considered it, qualified immunity would have been granted on that particular issue anyway, and we believe that is definitely something that the district court got right. One other thing I would like to bring up with respect to some of the questions I've been asked today, and it has to do with how are we supposed to view the evidence in this particular case. We do have a videotape. We have U.S. Supreme Court case law saying that when we have statements made by one individual that are contradicted by the videotape, we need to rely on the videotape. The only issue that I will concede is even debatable that's not showed by the videotape is whether he was gripping onto the chair behind the tree, and based on the case law in the Eighth Circuit, that particular fact is immaterial when we read it under Wordish and Foster. The other thing that's noteworthy in this case— You're going to be having a hard time convincing me that that's immaterial because the level of resistance, which is the only factor you have going in your favor, is key to the level of force that they can use, right? So how can whether he's gripping the chair not be material? Let's, for the sake of argument, just say he was passively resisting. We do know he was refusing to get up. That is undisputed, that he was refusing to get up. There is not a single case in this circuit that has said, you have to walk away and let the individual sit there in perpetuity after placing him under arrest because he refuses to get up. There's not a case that says that. Michael hasn't pointed to one. We do have cases in the Eighth Circuit that say when someone's sitting and not complying, you can remove them from the seated position and effectuate the arrest. There is not a single case that put either Officer Trevena or Officer Chaffee on notice that their conduct in effectuating this arrest violated Mr. Michael's constitutional rights. If I'm sitting in my front yard on a summer evening and a police officer comes up and says, get up, and I grip the sides of the chairs and say no, then you're saying that we have case law that say the officer can do that? No, Your Honor, because under your hypothetical, you were never placed under arrest in the first place. But after being placed under arrest, the case law absolutely indicates that you can remove an individual from a seated position once he refuses to get up. I'm out of time. Thank you. We request the decisions of the District Court be affirmed. Thank you. So, Mr. Storms, what case do we have that would have put the officers on notice that the level of force they used here was unconstitutional? Most narrowly, Kukla and Copeland, I believe. And I believe, Your Honors, I know the District Court and the appellees were talking about Watershed and Foster. You have both distinguished those cases in a manner very similar to this case, Your Honor, and Copeland, yourself, and the dissent in Blazek. The Watershed and Foster case don't apply in these instances. They're car cases, which are situations that present an entirely different set of risks and dangers. Also, they're de minimis injury cases, and de minimis injury doesn't mean anything here, in part because this wasn't, but it's also irrelevant. And that's really critical with respect to the injury. The injury informs us about how significant the force was that was used. And the District Court did make another inference that was wholly unfounded by the record. On page 17, the District Court said, The injury healed without need for surgery and without permanent impairment. The lack of permanent impairment is nowhere in the record. And, in fact, Mr. Michael, in his deposition at pages 121 through 125, explains how it's impaired him permanently. I'll admit I did not submit piles of medical records to discuss this injury, because I never thought that a broken arm would be minimized the way it was by the court. But it's an objectively serious injury, and it tells us that significant force was used as part of that arm bar. And just another piece, the affidavit containing information that Mr. Michael made a false statement regarding his possession of the keys, that's immaterial to the qualified immunity analysis. Mr. Michael's testimony was, he did not know that he was in possession of the keys at the time. It's for the jury to believe whether that's true or not. But at the time that he was arrested, no one arrested him saying they had arguable probable cause, or probable cause, that he was in possession of the key. And that's an issue that's for the jury and is not something to be considered here. Thank you, Your Honors. Thank you, Counsel. The court appreciates your briefing and arguments today. The case will be submitted and decided in due course.